The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jan N. Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
In addition to the stipulations contained in the Pre-Trial Agreement, the parties furthermore stipulated as follows:
1. That the Form 28B dated 25 September 1990 was received into evidence at the time of the hearing as Stipulated Exhibit Number One;
2. That medical records from Gaston Memorial Hospital, Prime Medical records, office notes of Dr. Whitesides dated 20 June 1990, medical records of Dr. Sweet and two letters from Hay Clinic be received into evidence following the hearing as Stipulated Exhibit Number Two; and
3. That two pages of Dr. Sweet's medical records be received into evidence following the hearing as Stipulated Exhibit Number Three.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a male approximately 46 years of age who sustained an admittedly compensable injury to his cervical spine on 6 June 1990 arising out of and in the course of his employment with defendant-employer as a delivery driver when he jumped into a truck to stop it from rolling down a hill. Then on 7 June 1990 plaintiff sustained a second injury arising out of and in the course of his employment with defendant-employer while lifting a bag of ice at work associated with the sudden onset of a sharp pain in the right cervical spine which radiated into his right arm and hand; therefore, constituting a specific traumatic incident of the work assigned.
2. Following this injury, plaintiff sought medical treatment on 7 June 1990 from Prime Medical Center in Gastonia where x-rays of the dorsal spine and shoulder were negative. Diagnosis was neck sprain and plaintiff was referred for neurological evaluation.
3. Plaintiff subsequently saw Dr. Whitesides on 20 June 1990 to whom he related complaints of severe pain in the vertebral border of the scapula on the right along with stiffness in the cervical spine and pain with motion. Examination was negative for weakness and numbness. Reflexes were equal; however, limitation of motion was severe. Impression was acute cervical disc and Dr. Whitesides referred plaintiff for x-rays of the cervical spine and prescribed bed rest and medication.
4. As plaintiff did not improve, he was admitted by Dr. Whitesides to Gaston Memorial Hospital on 26 June 1990 for further evaluation of his continuing complaints of severe pain in his cervical spine associated with limitation of motion. At the time of his admission, plaintiff related a history of jerking his neck and noting an onset of neck pain during the incident of 6 June 1990; and, thereafter on 7 June 1990 developing a deep, stabbing pain with radiation into the shoulder and biceps area. X-rays were taken of the cervical spine and were negative as was a cervical myelogram and post-myelographic CT-scan. Conservative treatment consisting of physical therapy, bed rest and medication was instituted; however, plaintiff did not continue with the prescribed treatment leaving the hospital against medical advise on 1 July 1990.
5. Thereafter, plaintiff sought medical treatment form Dr. Raymond Sweet, a neurosurgeon on 18 July 1990 for continuing complaints of pain in his neck and right shoulder area. Following examination, Dr. Sweet's impression was possible low cervical herniated nucleus pulposis (HNP), possible compression fracture in the upper thoracic, lower cervical spine area. It is noteworthy that examination of plaintiff's extremities was unremarkable. A straight leg raising test was negative bilaterally and plaintiff made no complaints of low back pain.
6. When re-seen on 24 July 1990, while examination revealed spasms across both the trapezius and the lower cervical paraspinous muscles, examination revealed no spasms in plaintiff's lower back area and plaintiff again made no complaints of low back pain. Impression was muscle strain for which physical therapy was recommended. Dr. Sweet referred plaintiff to Robert Hay, D.C. for his physical therapy treatments. However, due to plaintiff's sister's illness, these treatments were re-scheduled to commence following his next visit with Dr. Sweet which was 6 August 1990.
7. Examination on 6 August 1990 continued to reveal spasm in the plaintiff's cervical paraspinous and trapezius muscles. Otherwise, the examination was within normal limits. Six physical therapy treatments were scheduled with Dr. Hay during the next two-week-period.
8. When re-seen by Dr. Sweet on 20 August 1990, Dr. Sweet noted during his examination that plaintiff's condition had improved with the physical therapy provided by the chiropractic treatment and during discussions with Dr. Hay, it was arranged for plaintiff to receive nine more treatments.
9. When initially seen by Dr. Hay on 7 August 1990, plaintiff completed a questionnaire listing his complaints as headaches, neck pain and numbness in his shoulder blades. He made no mention of low back or leg pain. During August 1990, Dr. Hay treated plaintiff solely for complaints regarding his cervical spine. It was not until 10 September 1990 that plaintiff first received treatment from Dr. Hay for a lumbar spine problem.
10. When seen by Dr. Sweet on 13 September 1990, examination of plaintiff's neck was negative for spasm or tenderness. Plaintiff had completely recovered form his cervical injuries and was released as of 17 September 1990 to return to his regular work duties. In Dr. Sweet's opinion, plaintiff sustained no permanent disability to his cervical spine as a result of the injury giving rise to this claim. However, on 13 September 1990, plaintiff for the first time complained of pain in his low back and in both of his legs to Dr. Sweet which Dr. Sweet was unable to attribute to the on-the-job injuries plaintiff sustained in June 1990 as evaluation of plaintiff on 18 July 1990 revealed no evidence of a low back problem and plaintiff's complaints of pain in his low back area were not compatible with the history he had related to Dr. Sweet.
11. After being released by Dr. Sweet, plaintiff continued to receive chiropractic treatment from Dr. Hay. During every visit with Dr. Hay after 10 September 1990 until released by Dr. Hay in June 1991, plaintiff received treatment to his lumbar spine. Plaintiff also received treatment to his cervical spine. Plaintiff never returned to see Dr. Sweet after 13 September 1990 and the additional treatment plaintiff received from Dr. Hay was not authorized by Dr. Sweet. Although it appeared that ten additional visits after 31 August 1990 were authorized by defendant-insurance carrier, plaintiff did not seek approval from the Industrial Commission for the treatment he continued to receive from Dr. Hay in excess of the twenty-five approved visits. Regarding the issue of the necessity of plaintiff receiving further chiropractic treatment for his cervical spine condition, the undersigned affords more weight to the opinion of Dr. Sweet, a neurosurgeon, than that of Dr. Hay, a chiropractor. As plaintiff had reached maximum medical improvement and had sustained no permanent disability to his cervical spine as of 13 September 1990, the treatment afforded plaintiff by Dr. Hay after 13 September 1990 did not tend to effect a cure, give relief or lessen plaintiff's disability.
12. Plaintiff's testimony and the history he related to Dr. Hay of onset of low back pain immediately following the incident of June 1990 is not deemed credible. Evidence of record reveals that plaintiff received no treatment for lumbar back problems until 10 September 1990, that when Dr. Hay conferred with Dr. Sweet on 20 August 1990, there was no mention of lower back problems and that when plaintiff saw Dr. Sweet on 6 August 1990 prior to his first visit with Dr. Hay on 7 August 1990, he made no mention to Dr. Sweet of experiencing low back pain. Dr. Hay's testimony and summaries of his treatment of plaintiff which indicate that plaintiff complained of low back pain on 7 August 1990 and his opinion that plaintiff's low back pain resulted from the injury in June 1990 are not corroborated by the other evidence of record and are not deemed controlling in this matter.
13. As of 13 September 1990, plaintiff had fully recovered from the injury to his cervical spine which he had sustained as a result of the injury by accident giving rise hereto without any permanent disability. Plaintiff's low back problems are unrelated to the injury by accident he sustained in June 1990.
14. After being released to return to work by Dr. Sweet, plaintiff was scheduled to return to work for defendant-employer on 17 September 1990 as a truck driver; however, plaintiff did not return to work for defendant-employer on 17 September 1990. Furthermore, when plaintiff was later offered light duty work involving no heavy lifting, bending, squatting or stooping, plaintiff refused said employment. Plaintiff's loss of earnings after 13 September 1990 are unrelated to the injury by accident giving rise to this claim.
* * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in June 1990 to his cervical spine. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff has failed to prove that he sustained an injury to his lumbar spine as a result of the injury by accident arising out of and in the course of his employment with defendant-employer in June 1990. See Click v. Pilot FreightCarriers, Incorporated. 300 N.C. 164, 265 S.E.2d 389 (1980).
3. Plaintiff is entitled to have defendants pay all medical treatment arising from this injury by accident including twenty-five treatment visits by Dr. Hay to the extent said treatment tended to effect a cure, give relief or lessen plaintiff's disability. Plaintiff is not entitled to have defendants pay for additional treatments rendered plaintiff by Dr. Hay. N.C. Gen. Stat. § 97-25.
4. Plaintiff is, therefore, not entitled to further benefits under the Workers' Compensation Act. N.C. Gen. Stat. § 97-2 et. seq.
* * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. This claim must under the law be and is hereby DENIED.
2. Defendants shall pay expert witness fees in the amounts of $225.00 to Dr. Sweet and $120.00 to Dr. Hay.
3. Each side shall bear its own costs.
 S/ ___________________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________________ JAMES J. BOOKER COMMISSIONER